THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DR. GUY R. FOGEL, M.D. | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION No. 4:06-CV-00260 |
| | § | |
| TEXAS DEPARTMENT OF INSURANCE | § | |
| DIVISION OF WORKERS COMPENSATION | § | |
| WILLIAM C. NEMETH, M.D. | § | |
| *Defendants.* | § | |

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending before the Court is Defendant's Motion for Summary Judgment (Document No. 19) and Plaintiff's Motion for Continuance. After having considered the motion, the absence of a response to the motion, the summary judgment evidence, and the applicable law, the Court ORDERS,[1] for reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED.

### I.      Factual History

The Texas Department of Insurance Division of Workers Compensation ("Division" herein), formerly the Texas Workers Compensation Commission (also "Division" herein), maintains an approved doctor list ("ADL") pursuant to the TEXAS LABOR CODE § 408.023 (2006). Except in emergency situations, a doctor must be on the ADL to (1) provide healthcare to injured workers

---

[1]On June 14, 2006, upon the consent of all the parties, this case was transferred to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 10.

1

covered by the Division or (2) receive payment for such services.  TEX. LAB. CODE § 408.023(f).

In 2001, the Texas Legislature directed the Division (then the TWCC) to create a new ADL.  TEX.

LAB. CODE § 408.023(a).  Pursuant to and in conformity with this authority, the Division drafted

rules (found in the Texas Administrative Code) to formalize the new ADL procedures.  Under the

old ADL rules, all licensed doctors in Texas were automatically placed on the ADL.  The new ADL

rules required all doctors to re-apply for admission to the new ADL.  28 TEX. ADMIN. CODE

§ 180.20(a)(1).  A doctor's admission to the new ADL may be granted or denied based on review

of the doctor's complete application by the Division.  *See* 28 TEX. ADMIN. CODE § 180.20(d).  The

new ADL was created on September 1, 2003.  28 TEX. ADMIN. CODE § 180.20.  All doctors who

applied for admission to the new ADL were granted a temporary exception, allowing them the

benefits of presence on the ADL, during the pendency of their application's review. 28 TEX. ADMIN.

CODE § 180.20(e).

Plaintiff Guy Fogel, M.D. ("Fogel") is a licensed physician in Texas.  He was listed on the

old ADL until it expired on September 1, 2003.  The Division granted Fogel temporary exception

status effective September 1, 2003.  Document No. 19, p. 89.  Fogel re-applied for admission to the

ADL on July 9, 2003.  Document No. 19, pp. 84-86.  On July 29, 2003, the Division informed Fogel

of its intent to perform a quality review of his services.  Document No. 19, p. 295.  In accordance

with 28 TEX. ADMIN. CODE § 180.20(d), some members of the Division's Medical Quality Review

Panel ("MQRP") were selected to review six of Fogel's workers compensation cases.  *Id*.  The

MQRP members were selected for their expertise in orthopedics, Fogel's specialty area.  *Id*.  All

MQRP members were expected to recuse themselves in the case of any conflict of interest.  *Id*.  Their

initial findings were sent to Fogel on May 21, 2004, in a "Preliminary Findings" report, containing

the MQRP's goal in evaluation, Division standards of care, completed worksheets evaluating each of the six cases, and an invitation for Fogel to respond to the preliminary findings.  Document No. 19, pp. 31-57.  Fogel timely responded June 2, 2004.  Document No. 19, pp. 59-76.  The Preliminary Findings and Fogel's response were provided to a MQRP Executive Council for review.   The Executive Counsel is a panel comprised of eleven doctors, four of whom had specialties in orthopedics.  Document No. 19, p. 296.  Pursuant to  28 TEX. ADMIN. CODE § 180.20(d), the Executive Council made a recommendation to the Medical Advisor that Fogel's application be denied.  According to the Executive Council, Fogel was not eligible for the new ADL because he did not meet professionally recognized standards of health care, and did not practice medicine or provide health care in an acceptable manner consistent with the public health, safety, and welfare.  Document No. 9, p. 21.  The Division sent Fogel a copy of its final quality review report on August 2, 2004.  Document No. 1, Exh. B.  Shortly thereafter, on August 13, 2004, the Divison sent a letter denying Fogel's application to the new ADL, citing the final findings of the MQRP as the basis for its decision and again inviting Fogel's response.  Document No. 19, pp. 92-94.  Fogel timely responded through his attorney, additionally questioning the basis for the Division's decision and requesting an opportunity to, in person, discuss and provide evidence of the necessity and reasonableness of Fogel's treatments.  Document No. 19, pp. 105-288.  After considering Fogel's extensive response, the Division sent an official notice denying Fogel's application on December 16, 2004.  Document No. 1, Exh. D.  This notice addressed Fogel's concerns regarding the basis for its decision and denied his request for a hearing.  *Id*.  This final notice also cited the findings of the Medical Quality Review, as published in the August 13, 2004 letter, as basis for the Division's decision.  *Id*.  The August 13, 2004 letter to Fogel reads in relevant part:

3

> **Medical Quality Review #03-QR-042 found that you provided health care that did not meet professionally recognized standards of health care, by:**
>
> - **Administering improper, unreasonable, or medically unnecessary health care; and**
>
> - **Having unjustifiable differences between the subject's treatments and acceptable standards of care.**
>
> Section 180.26(d)(3) authorizes the Medical Advisor to recommend the imposition of sanctions against a doctor or the deletion of a doctor from the ADL for conduct relating to the delivery, evaluation, or remuneration or health care the [Division] finds is not fair and reasonable or that the [Division] determines does not meet professionally recognized standards of health care.
>
> **Medical Quality Review #03-QR-042 found that you failed to practice medicine or provide health care in an acceptable manner consistent with the public health, safety, and welfare, by:**
>
> - **Providing substandard clinical care as evidenced by excessive care; and**
>
> - **Providing substandard clinical care as evidenced by deficient care.**
>
> Section 180.26(c)(3)(B)(i) requires the Medical Advisor to recommend the deletion of a doctor from the ADL for the professional failure to practice medicine or provide health care in an acceptable manner consistent with the public health, safety, and welfare, including, but not limited to, providing substandard clinical care as evidenced by excessive or deficient care.

Document 19, pp. 92-92 (emphasis in original).

## II.     Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  This standard

4

provides that the mere existence of some factual dispute will not defeat a motion for summary judgment. *See Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1442 (5th Cir. 1993); *Thomas v. Price,* 975 F.2d 231, 235 (5th Cir. 1992). Rather, Rule 56 mandates that the fact dispute be genuine and material. *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 314 (5th Cir. 1995). The substantive law determines which facts are material, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), and the Court must view these facts and the inferences to be drawn from them in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (*citing United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *Kelley v. Price Macemon, Inc.,* 992 F.2d 1408, 1413 (5th Cir. 1993); *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-27 (1986). Once this burden has been met, the non-moving party can resist the motion for summary judgment by making a positive showing that a genuine dispute of material fact does indeed exist and that it consists of more than bare allegations in briefs and pleadings. *Anderson*, 477 U.S. at 250. The non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 325. "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). Once the parties have submitted evidence of contradictory facts, justifiable inferences are to be drawn in the light most favorable to the non-movant. *Anderson*, 477 U.S. at 255.

Even if the standards of Rule 56 are met, a court may deny a motion for summary judgment

if, in its discretion, it determines that "a better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 257; *Veillon v. Exploration Services, Inc.,* 875 F.2d 1197, 1200 (5th Cir. 1989).

## III.     Discussion

In the cause now before the Court, Plaintiff alleges (1) denial of Fogel's due process guarantees under the Fifth and Fourteenth Amendments, (2) denial of Fogel's equal protection of the law and due process of law guarantees under the Constitution, and (3) that the Division's procedure used to deny doctors' admission to the new ADL is unconstitutional.   Defendant alleges in its Motion for Summary Judgment (1) Plaintiff's claims against the Division are barred by Eleventh Amendment immunity, (2) Plaintiff cannot maintain a claim against Nemeth, (3) the Court cannot review the Division's decision denying Fogel's application for admission to the new ADL, and (4) Plaintiff's procedural due process claims have no merit.   Fogel has filed no response to Defendant's motion.

## A.     Eleventh Amendment Immunity

The Division argues that the claims against it and its officers are barred by the Eleventh Amendment.   In reference to the Eleventh Amendment, the United States Supreme Court has held that an unconsenting State is immune from suits in federal court brought by her own citizens as well as citizens from other states, regardless of relief sought.  *Algilani v. Tex. Workers' Comp. Com'n*, No. 3:04-CV-0848-BF(D), 2006 WL 2035648 (N.D. Tex. July 18, 2006), and *Weldon v. Tex. Workers' Comp. Com'n*, no. 4:04-CV-516-Y, 2005 WL 3312284 (N.D. Tex. Dec. 6, 2005) (both citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).   The Court likewise

6

held in *Pennhurst* that the Eleventh Amendment bars suit against a state official when the relief sought is retroactive. 465 U.S. at 103. The Division is a statutorily created arm of the state of Texas and thus enjoys Eleventh Amendment privilege. *Algilani v. Texas Workers' Compensation Com'n,* 2006 WL 2035648 and *Weldon v. Tex. Workers' Comp. Com'n,* 2005 WL 3312284. This privilege grants sovereign immunity to the Division and immunity from retroactive relief to its officers for the decision to deny Fogel's application to the new ADL – the decision factually under-pinning Plaintiff's claims. This sovereign immunity, however, does not reach the constitutional violations alleged by Plaintiff. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 456 (U.S. 1976) (Stating that "the Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment. In that section Congress is expressly granted authority to enforce 'by appropriate legislation' the substantive provisions of the Fourteenth Amendment, which themselves embody significant limitations on state authority." (citations omitted)). As such, the decision to deny Fogel's application cannot be reached by the Court; we will only consider alleged constitutional violations herein.

**B.      Constitutional Guarantees**

In order to prevail under the procedural due process clauses of the Fifth and Fourteenth Amendments, Plaintiff must establish (1) ownership of a property or liberty interest entitled to procedural due process protection and (2) that such interest was taken away without sufficient process. *Board of Regents v. Roth,* 408 U.S. 564, 569-70 (U.S. 1972), *Weldon v. Tex. Workers' Comp. Com'n,* 2005 WL 3312284.

To have a property interest in a benefit, Plaintiff must establish a legitimate claim of

7

entitlement to the benefit that amounts to more than an abstract need or desire for it, and must have more than a unilateral expectation. *Id.* Plaintiff did not have a property interest in his presence on the new ADL. Professional licensure or the right to practice a chosen profession may be the subject of a property interest. *See Leland v. Miss. Bd. of Reg. for Prof. Eng. and Land Surv.*, 841 F.Supp. 192, 198 (S.D.Miss. 1993) (licensure), and *Vander Zee v. Reno*, 73 F.3d 1365, 1370-71 (5th Cir. 1996)(right to practice). The Division, however, did not deny either to Fogel. Denial of admission on the new ADL does not in any way affect Fogel's medical license or his ability to practice medicine absent unreasonable government interference. As a licensed medical doctor in the State of Texas, Fogel may still practice his chosen profession outside the workers' compensation program. Indeed, the *Algilani* court, in a case strikingly factually similar to the present one, forcefully reasoned "[m]erely because government may not unreasonably interfere with a person's right to practice his profession does not mean that it must pay him to practice it." *Algilani*, 2006 WL 2035648 (quoting *Weldon*, 2005 WL 3312284).

Likewise, Plaintiff did not possess a liberty interest in his admission to the new ADL. Establishment of a liberty interest requires that "the individual must not only be stigmatized, but also must be stigmatized in connection with a denial of a right or status previously recognized under state law." *Moore v. Otero*, 557 F.2d 435, 437-38 (5th Cir. 1977). The Division, in its denial of Fogel's application to the new ADL, did not deny any right or status to which he was entitled. In *Algilani*, the court held that "no liberty interest is implicated because there was no alteration of a right or status. ... Neither his previous practice under the old ADL, nor his practice under the temporary exception, created an expectation of a right or status recognized under state law." 2006 WL 2035648. Additionally, the Division's publicly available list of doctors who were denied admission

8

does not single out or accuse Fogel in any way that would impugn his reputation or create a liberty interest in his admission to the new ADL.[2]

If a valid property or liberty interest is established, Plaintiff must further show that the process provided to him was insufficient.  The Supreme Court has defined guidelines used in the Court's assessment of the sufficiency of process:

> Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Due process is flexible and calls for such procedural protections as the particular situation demands. Accordingly, resolution of the issue whether the administrative procedures are constitutionally sufficient requires analysis of the governmental and private interests that are affected. More precisely, identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
>
> *                         *                         *
>
> The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it. All that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard, to insure that they are given a meaningful opportunity to present their case. In assessing what process is due in a particular case, substantial weight must be given to the good-faith judgments of the individuals charged by Congress with the administration of social welfare programs that the procedures they have provided assure fair consideration of the entitlement claims of individuals.

*Mathews v. Eldridge*, 424 U.S. 319, 334-35, 348-49 (U.S. 1976) (citations omitted).

Assuming *arguendo* that Plaintiff had a protectable property or liberty interest, the Division's process in denying those interests was sufficient.  Fogel was not removed from the ADL until it expired, and was not denied the temporary exception until after his file had been reviewed by the

---

[2]The list, titled Denied Applications to the Approved Doctors List, is available on the Division's website at www.tdi.state.tx.us/wc/hcprovider/denied.html, and lists over fifty doctors.

MQRP.  Fogel was given notice and the opportunity to respond to the MQRP's assessment more than once, which he did.  His responses were considered in the Division's decision-making process. The Supreme Court has long held that states have a legitimate interest in maintaining quality medical care for their citizens and that such interest validates states' regulation of professional activity.  *See Bigelow v. Virginia*, 421 U.S. 809, 825 (U.S. 1975).  Giving "substantial weight" to the good-faith judgment of the Division and considering the state's interest in quality medical care under its workers' compensation program, Fogel's interest in being listed on the ADL, and the process by which his application was denied, the Court determines that the Division's process, provided by statute, is not unconstitutional.

In light of the above findings and the facts alleged in Plaintiff's complaint, Plaintiff alleges no facts showing that his right to equal protection under the Constitution has been violated.

**IV.     Conclusion and Order**

Based on the foregoing, it is

ORDERED that Defendant's Motion for Summary Judgment (Document No. 19) is GRANTED, and summary judgment is GRANTED in favor of Defendant on all the claims alleged by Plaintiff Dr. Guy R. Fogel, M.D.

Signed at Houston, Texas, this 12th  day of April, 2007.

Frances H. Stacy
United States Magistrate Judge